UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SPECTOR RED BALL, INC., | § | Cv. No. SA:12-CV-00423-DAE |
| | § | Bankr. No. 82-50329-RBK |
| Debtor. | § | |
| _____ | § | |
| | § | |
| OMEGA CONSULTING, INC., | § | |
| | § | |
| Appellant, | § | |
| | § | |
| vs. | § | Adversary No. 11-5184-RBK |
| | § | |
| RANDOLPH N. OSHEROW, Chapter | § | |
| 7 Trustee for the Estate of TCC | § | |
| Industries, Inc., and Spector Red Ball, | § | |
| Inc., | § | |
| | § | |
| Appellees. | § | |

ORDER AFFIRMING BANKRUPTCY COURT'S ORDER
DISMISSING ADVERSARY PROCEEDING

On March 28, 2013, the Court heard oral argument on Appellant

Omega Consulting's appeal of an order of the United States Bankruptcy Court for

the Western District of Texas, San Antonio Division, entered in Adversary

Proceeding No. 11-5184-RBK, styled Omega Consulting, Inc. v. Spector Red Ball,

Inc. and TCC Industries, Inc. (In re Spector Red Ball, Inc.) (the "Adversary

Proceeding" or "Adv. P."), on January 9, 2012.  The Order granted the Chapter 7

Trustee's motion to dismiss the Adversary Proceeding.  (See Adv. P., doc. # 3.)

1

Kenneth C. Bell, Esq., appeared on behalf of Appellant Omega Consulting.  Steve

P. Turner, Esq., appeared on behalf of Appellee Randolph N. Osherow, Chapter 7

Trustee for the Estate of TCC Industries Inc. and Spector Red Ball Inc. ("the

Trustee").  For the reasons that follow, the Court **AFFIRMS** the Order of the

bankruptcy court.

<u>STANDARD OF REVIEW</u>

A district court reviews a bankruptcy court's findings of fact for clear

error.  <u>In re Kennard</u>, 970 F.2d 1455, 1457–58 (5th Cir. 1992) (citing <u>In re

Multiponics, Inc.</u>, 622 F.2d 709, 713 (5th Cir. 1980)); Fed. R. Bankr. P. 8013.

Conclusions of law are reviewed de novo.  <u>Id.</u> at 1458; <u>In re Stembridge</u>, 394 F.3d

383, 385 (5th Cir. 2004).  A bankruptcy court's decision to dismiss a case is

reviewed for abuse of discretion.  <u>Peterson v. Atlas Supply Corp. (In re Atlas

Supply Corp.)</u>, 857 F.2d 1061, 1063 (5th Cir. 1988).

<u>BACKGROUND</u>

In the 1980s, Defendant-Appellee Spector Red Ball, Inc. ("SRB") was

the nation's largest trucking company.  (<u>In re Spector Red Ball, Inc.</u>, Bk. No.

82-50329-RBK (Bankr. W.D. Tex. 1982) ("SRB Bankr."), doc. # 3045-6 Ex. 11

at 8.)  Defendant-Appellee TCC Industries, Inc. ("TCC") is a former parent

company of SRB.  (Doc. # 5 at 4[1]; In re TCC Indus., Inc., Bk. No. 00-13535-CAG

(Bankr. W.D. Tex. 2000) ("TCC Bankr."), doc. # 50 ¶ 2.)  Underlying this appeal

are two separate bankruptcy proceedings—SRB's and, later, TCC's—and a dispute

over assets that Plaintiff-Appellant Omega Consulting ("Omega"), an assignee of

one of SRB's creditors, alleges should not have been made part of TCC's

bankruptcy estate.  The Court begins by recounting the relevant history, which

stretches back over twenty years.

I.    SRB and TCC File for Bankruptcy and Their Cases Are Closed

        In April of 1982, SRB and certain of its affiliates filed for Chapter 11

bankruptcy in the U.S. Bankruptcy Court for the Western District of Texas, San

Antonio Division.  (Doc. # 6 ¶ 1; In re Spector Red Ball, Inc., Bk. No.

82-50329-RBK.)  On August 14, 1984, the bankruptcy court entered an Order

confirming the Consolidated Joint Plan of Reorganization filed May 30, 1984 (the

"Plan").  Among other things, the Plan accomplished the substantive consolidation

of the debtors; the sale and transfer of all of SRB's real estate assets to one of its

affiliates, TPI; the acquisition of all of TPI's stock by TeleCom Corporation

("TeleCom"), which later began operating as TCC; and the transfer of

"Distributable Assets" to a Liquidating Trustee.  (SRB Bankr., doc. # 3049 ¶ 2,

citing Plan at 3, 6, 8.)  The Plan and Confirmation Order also discharged and

---

[1] Except where otherwise noted, citations are to the docket in Cv. No.
SA:12-CV-00423-DAE.

released SRB from all debts and liabilities except those specifically retained by or assumed by TPI and the obligation to turn over the Distributable Assets to the Liquidating Trustee.  (SRB Bankr., doc. # 3049, citing Confirmation Order ¶¶ 4, 5.)  Further, the Plan and Confirmation Order operated as an injunction against further collection efforts or enforcement of claims against SRB.  (Id. ¶ 5(c).)  SRB's bankruptcy case was closed on March 23, 1994.

Following the bankruptcy of SRB, which had been TCC's largest subsidiary, TCC's financial condition continued to deteriorate; it filed for bankruptcy in the Bankruptcy Court for the Western District of Texas, Austin Division, in December of 2000.  (TCC Bankr., doc. # 45 ¶ 1.)  That case was closed on May 25, 2002.  (Id.)

## II.    TCC's Bankruptcy Case Is Reopened

Years later, on June 14, 2010, one of TCC's creditors filed a Motion to Reopen TCC's Chapter 7 case.  (TCC Bankr., doc. # 22.)  The creditor alleged that certain newly discovered assets belonged to TCC's bankruptcy estate: approximately $430,000.00 in Prudential Financial common stock and dividends ("the Prudential Stock") arising from Prudential's demutualization (that is, its reorganization from a mutual insurance company to a stock company).  (Id. ¶ 3.)  He requested that a Chapter 7 trustee be appointed to recover and administer the Prudential Stock.  (Id.)  On August 4, 2010, the Bankruptcy Court for the Western

4

District of Texas, Austin Division, reopened TCC's bankruptcy case (TCC Bankr.,

doc. # 31), and on August 31, 2010, Defendant-Appellee Randolph N. Osherow

("the Trustee") was appointed Trustee of TCC's estate (TCC Bankr., doc. # 40).

On November 12, 2010, the Trustee sought an order authorizing the State of Texas,

which was holding the Prudential Stock as unclaimed property, to turn those assets

over to TCC's bankruptcy estate (TCC Bankr., doc. # 45); the bankruptcy court

entered an Order to that effect on December 7, 2010 (TCC Bankr., doc. # 48

("Turnover Order")).

III.   Omega, Through SRB's Receiver, Moves to Vacate the Order

Earlier in 2010, prior to the events described in Part II,

Plaintiff-Appellant Omega had purchased a claim against SRB from the estate of

M.C. Benton, who in his lifetime was the CEO of SRB.  (TCC Bankr., doc. # 65 at

3.)  Shortly thereafter, Omega filed a lawsuit against SRB in Bexar County for

fraud (related to ERISA obligations) and received a default judgment of $424,000.

(Id.)  The state court then opened a receivership for SRB and appointed Jerome B.

White Receiver.  (Id.)

Two days after the bankruptcy court ordered the State of Texas to turn

over the Prudential Stock to TCC's bankruptcy estate, the Receiver filed a Motion

to Vacate the Turnover Order.  (TCC Bankr., doc. # 50.)  The Receiver argued that

SRB, not TCC, was the owner of the Prudential insurance policy—and, therefore,

the Prudential Stock.  (TCC Bankr., doc. # 50 ¶ 4.)  TCC, argued the Receiver,

"did not retain any equitable interest in [SRB] when [TCC] exited [SRB's] Chapter

11 proceeding" because it "transfer[red] ALL capital stock that it held in [SRB]

back to [SRB] via its liquidating trustee."  (Id. ¶ 5.)  The Receiver argued that the

stocks and dividends arising from the Prudential insurance policy, because they did

not exist at the time of SRB's bankruptcy, re-vested in SRB after confirmation of

its Chapter 11 plan; and, accordingly, that the Prudential Stock should not have

been turned over to TCC's bankruptcy estate.  (Id. ¶ 7.)

At the hearing on the Receiver's motion, the State of Texas disputed

the Receiver's contention that he was working on behalf of all of SRB's creditors.

(TCC Bankr., doc. # 65 at 4.)  In reality, asserted the State of Texas, the Receiver

was acting only on behalf of one creditor, Omega.  (Id.)  Accordingly, the State of

Texas argued that turning the Prudential Stock over to the Receiver would violate

§ 74.501(e) of the Texas Property Code, which prohibits the comptroller from

paying a claim against unclaimed property to a "creditor, a judgment creditor, a

lienholder, or an assignee of the reported owner or the owner's heirs."

TCC's Chapter 7 Trustee also urged the bankruptcy court to deny the

Receiver's motion, arguing that SRB should never been appointed a receiver in the

first place.  (Id. at 3.)  The Trustee asserted that Omega's state-court lawsuit was

invalid because it was filed in violation of SRB's 1984 bankruptcy plan and

confirmation order, which contained an injunction against "the commencement or continuation of any action, the employment of process or act to collect, recover or offset" the debt discharged in the case.  (Id.)  Alternatively, the Trustee argued that SRB's interest in the Prudential life insurance policy was transferred to TCC as part of the stock-purchase agreement incorporated in SRB's bankruptcy plan.  (Id.)

The bankruptcy court denied the Receiver's Motion to Vacate the Turnover Order, finding that he did not have standing to file it.  (TCC Bankr., doc. # 65 at 6.)  First, the court noted that it was "undisputed that SRB owned the Prudential insurance policy prior to filing its bankruptcy case."  (Id.)  Then, looking to 11 U.S.C. § 541(a)(6) and (7), it acknowledged that the bankruptcy estate includes "proceeds, product, offspring, rents, or profits of or from property of the estate" and "any interest in property that the estate acquires after commencement of the case."  (TCC Bankr., doc. # 65 at 5.)  "The definition of 'proceeds,'" the bankruptcy court continued, "encompasses 'any conversion in the form of property of the estate, and anything of value generated by property of the estate.'"  (Id. (citing In re Hanley, 305 B.R. 84, 86–87 (Bankr. M.D. Fla. 2003).)  Because SRB owned the Prudential insurance policy prior to filing its bankruptcy petition, the bankruptcy court concluded that the disputed assets were "derived from SRB's prepetition ownership of the insurance policy" and that "the stock [was] therefore property of SRB's bankruptcy estate (if it was not transferred to

TCC in the stock purchase agreement)."  (TCC Bankr., doc. # 65 at 6.)  Since the

Receiver claimed to be acting "on behalf of the reorganized SRB" (a confusing

proposition, since it appears that SRB has been defunct since its bankruptcy case

closed in 1984), and since "the reorganized SRB" (as opposed to SRB's

bankruptcy estate) had no interest in the Prudential Stock, the bankruptcy court

denied the Receiver's motion for lack of standing.  (Id.)

IV.    Omega Moves to Reopen SRB's Bankruptcy Case

Omega did not move the bankruptcy court to reconsider its Order

denying the Receiver's Motion to Vacate the Turnover Order; nor did it appeal that

Order or move to stay it.  Instead, on December 20, 2011, Omega filed a motion in

SRB's bankruptcy case seeking to reopen SRB's Chapter 11 proceeding.  (SRB

Bankr., doc. # 3045.)  In that motion, Omega stated that "while it may be feasible

to appeal the judgment of [TCC's] current bankruptcy court, it seems appropriate

and more diligent, reasonable, and deferential in this matter to simply obtain an

order from this Court clarifying [SRB's] post-bankruptcy rights . . . ."  (Id. ¶ 15.)

Omega again insisted that TCC "did not retain any interest in [SRB]" because it

had "transfer[red] ALL capital stock that it held in [SRB] back to [SRB] via its

liquidating trustee."  (SRB Bankr., doc. # 3045 ¶ 13.)  Specifically, Omega argued

that TCC had, as part of a settlement with SRB, "purchas[ed] a viable subsidiary of

[SRB] and then explicitly and affirmatively relinquish[ed] equitable and legal title

8

to the capital stock [that it had] held in [SRB]." (Id. ¶ 14.)  Accordingly, Omega argued that TCC was "attempting to obtain possession and control of property in which it has absolutely no interest . . . ." (Id. ¶ 12.)

In opposition to Omega's motion, the United States Trustee ("UST") argued that Omega was merely seeking to collaterally attack the Turnover Order, which was a "final[,] non-appealable Order," when "the proper procedure would have been to file a Notice of an Appeal." (SRB Bankr., doc. # 3049 ¶ 5.)  The UST pointed out that the State of Texas had already complied with the Order and that granting the relief Omega requested would subject the State of Texas to "inconsistent and contrary orders" from different courts. (Id. ¶ 7.)  Finally, the UST argued that "a simple review of the Plan and Confirmation Order supports the conclusion [that] any assets not transferred to TCC were not retained by SRB in some sort of post-bankruptcy vacuum . . . ." (Id.)  Instead, any assets not transferred "became 'Distributable Assets' belonging only to the post-confirmation Liquidating Trustee." (Id. (citing SRB's Chapter 11 Plan at 3 ¶ (E)).)

On January 4, 2012, the bankruptcy court heard Omega's Motion to Reopen.  At the conclusion of the hearing, the court, interpreting the Stock Purchase Agreement attached to SRB's Chapter 11 plan, made the following findings of fact and/or conclusions of law:

> [I]t appears to me that 'other miscellaneous shares,' under Schedule A-4, that it went—all assets of TPI and other miscellaneous shares went to

TeleCom, which is now TCC.  So, Mr. Osherow can administer it in Austin
in that [i.e., TCC's] Chapter 7 case, and I don't think I need to reopen this
one.
. . .
And, so, whatever Prudential rights were there went either to TCC or to the
liquidating trustee.  And I would say they went to TCC, so I think TCC
should administer it.
. . .
So . . . I'll deny the motion.  We're not going to reopen the case . . . .

(Doc. # 6 ¶ 8 (quoting Tr. at 102, line 24, through 103, line 5; 105, lines 14–17,

22–25).)  Accordingly, on January 5, 2012, the bankruptcy court entered an order

denying Omega's Motion to Reopen SRB's bankruptcy case.  (SRB Bankr.,

doc. # 3052.)  Omega did not appeal or move for reconsideration of that Order.

V.     Omega Initiates the Adversary Proceeding

On the same day that Omega filed the Motion to Reopen, it also filed

a Complaint for Declaratory and Injunctive Relief against SRB and TCC, initiating

the adversary proceeding whose dismissal is the subject of this appeal—Adversary

Proceeding No. 11-5184-RBK (Bankr. W.D. Tex. 2011) (the "Adversary

Proceeding" or "Adv. P.") (Adv. P., doc. # 1).  Once again, Omega asserted that

"[t]he underlying and incontrovertible facts of this matter show that [TCC] . . .

filed a chapter 7 bankruptcy . . . long after having divested itself of its shareholder

interest in [SRB]."  (Id. ¶ 7.)  Moreover, "[SRB's] interest in the Unclaimed

Property was not created until the time the mutual insurance company . . .

demutualized," so "the bankruptcy estate never held a right or claim in the

Unclaimed Property." (Id. ¶¶ 31–32.) Accordingly, Omega asserted that "the ruling that the Austin Bankruptcy Court issued on November 3, 2011[,] [was] erroneous as a matter of law . . . [and] [a]s such, the original turnover order and that court's November 4th order should be set aside without further unnecessary delay." (Id. ¶ 16.) Specifically, Omega sought (1) a declaration that the Prudential Stock "[does] not constitute property of the Bankruptcy Estate of [SRB] nor of the Bankruptcy Estate of [TCC], and that all named Defendants have no valid claim thereto or that their interest therein is junior and subordinate to the interest of the Plaintiff" (id. ¶ 36); (2) an order directing the Comptroller of Public Accounts for the State of Texas to turn over the Prudential Stock to the Receiver (id.); and (3) an injunction preventing TCC and the Trustee from asserting any claims against said property (id.).

On January 9, 2012, five days after the bankruptcy court denied Omega's Motion to Reopen SRB's bankruptcy case, the Trustee filed a Motion to Dismiss Adversary Proceeding. (Adv. P., doc. # 2.) The Trustee argued that, "[a]s a result of the Court's ruling [denying Omega's Motion to Reopen], there is no pending bankruptcy case, and this adversary proceeding should be dismissed." (Id. ¶ 3.) The bankruptcy court granted the Trustee's Motion on the same day, though it did not state its reasons for doing so. (Adv. P., doc. # 3.)

Because the bankruptcy court did not state the grounds on which it decided to dismiss the adversary proceeding, Omega, on January 19, 2012, filed a Motion for Clarifying Order requesting that the bankruptcy court clarify "whether its dismissal of the adversarial complaint is based on the failure to issue a subpoena to [TCC's] Trustee or whether it is based on the fact that the bankruptcy case for [SRB] remains closed." (Adv. P., doc. # 5.)  The bankruptcy court denied Omega's Motion for Clarifying Order on January 25, 2012, saying only:

> On this day came on to be considered the Plaintiff's Motion for Clarifying Order (Court document #5), and the Court is of the opinion that the Motion should be denied. The case has been closed, and this adversary proceeding was dismissed on January 9, 2012. The Motion to Reopen Case was denied because all the remaining assets have been passed to TCC Industries, Inc.
>
> It is, therefore, ORDERED, ADJUDGED, AND DECREED that the above-referenced Motion for Clarifying Order is hereby DENIED.

(Adv. P., doc. # 8.)

On the same day that Omega filed its Motion for Clarifying Order, it also filed a Notice of Appeal.  (Adv. P., doc. # 6.)  The Notice explained that Omega was appealing "the order and decree of the bankruptcy judge dismissing the adversarial complaint . . . ."  (Id.)  That appeal is now before this Court.

## QUESTION PRESENTED ON APPEAL

It is important, at the outset, to make clear what is and is not the subject of the instant appeal.  Omega has not appealed any of the Orders entered by the Bankruptcy Court for the Western District of Texas, Austin Division, in TCC's

bankruptcy case, Bk. No. 00-13535-CAG.  Nor has Omega appealed the Order

entered by the Bankruptcy Court for the Western District of Texas, San Antonio

Division, in SRB's bankruptcy case, Bk. No. 82-50329-RBK, denying Omega's

Motion to Reopen SRB's bankruptcy case (SRB Bankr., doc. # 3052).  Instead,

Omega has appealed <u>only</u> the Order entered by the Bankruptcy Court for the

Western District of Texas, San Antonio Division, <u>dismissing the Adversary

Proceeding</u>, Bk. No. 11-5184-RBK (Adv. P., doc. # 3).  Accordingly, Omega

frames the question presented for appeal as:

> Whether the bankruptcy court erred in dismissing this adversary proceeding,
> brought to obtain a determination of rights in certain funds owed to the
> bankrupt as a result of a demutualization of an insurance company
> subsequent to the closing of the bankruptcy, which funds are currently held
> by the state of Texas as unclaimed property.

(Doc. # 5 at 3.)  Omega acknowledges that "[a] bankruptcy court's decision to

dismiss a case is reviewed for abuse of discretion."  (<u>Id.</u> at 6.)

Appellant, the Trustee, "does not dispute that this, in general terms, is

the issue presented."  (Doc. # 6 at 8.)  However, the Trustee asserts that the issue is

"[m]ore precisely" characterized as:

> Whether the Bankruptcy Court abused its discretion in dismissing the
> Adversary Proceeding after that Court had expressly found that the funds in
> question in the Adversary Proceeding were the property of TCC Industries,
> Inc.'s bankruptcy estate, and based on that finding had decided, by final,
> non-appealable order, that the Spector Red Ball bankruptcy case (the
> "Bankruptcy Case") should not be reopened.

(Id.)  Essentially, the Trustee insists that any determination regarding whether the bankruptcy court abused its discretion by dismissing the adversary proceeding must be made in light of the fact that the bankruptcy court had already determined that the underlying bankruptcy case should not be reopened.

DISCUSSION

I.      The Parties' Arguments

        A.  Plaintiff-Appellant Omega's Arguments

                Omega asserts that the bankruptcy court dismissed the Adversary Proceeding because it misunderstood its own jurisdiction: "The bankruptcy court[] [held] that, because the Red Ball bankruptcy case had been closed[,] there was no bankruptcy proceeding pending that was purportedly a [jurisdictional] prerequisite to an adversary proceeding."  (Doc. # 5 at 7.)  "This holding is wrong," insists Omega, because "[t]here is no need to have a pending bankruptcy proceeding." (Id.)  In other words, Omega appears to argue that the bankruptcy court dismissed the Adversary Proceeding because it believed—incorrectly, in Omega's view—that it did not have subject-matter jurisdiction over the Adversary Proceeding after it denied Omega's Motion to Reopen SRB's bankruptcy case.  (Id.)  "It is settled law," insists Omega, "that 'if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.'" (Doc. # 7 at 3 (quoting Doddy v. Oxy USA, Inc., 101 F.3d 448, 456 (5th Cir.

14

1996).)  Accordingly, Omega claims, since the Trustee concedes that the

bankruptcy court had jurisdiction at the outset, he is wrong to conclude "that

somehow jurisdiction evaporated when [the bankruptcy court] denied the motion to

reopen the case."  (Id. at 4.)

           Citing Querner v. Querner (In re Querner), 7 F.3d 1199 (5th Cir.

1993), Omega insists that "the decision to retain jurisdiction over related

proceedings rests within the sound discretion of the bankruptcy court."  (Id. at 8

(citing In re Querner, 7 F.3d at 1201).)  Omega concedes that, "because a court's

jurisdiction over related proceedings depends on the nexus between the underlying

bankruptcy case and the related proceeding, the dismissal or closing of a

bankruptcy case will, ordinarily, result in the dismissal of related proceedings."

(Id. at 7–8.)  However, while dismissal of related proceedings is the "general rule,"

Omega asserts that this case presents an exception—an instance in which it was an

abuse of discretion for the bankruptcy court to dismiss the related proceedings.

(Id. at 8.)  Instead, "[t]he proper disposition would have been to resolve the

adversary proceeding on the merits" and "to determine whether the property at

issue constituted property of the estate, by way of the schedules, and, therefore,

revested in the debtor."  (Doc. # 7 at 4.)

B.  Defendant-Appellee the Chapter 7 Trustee's Arguments

The Trustee agrees with Omega that the "general rule" is that the "dismissal or closing or a bankruptcy case should result in the dismissal of related proceedings."  (Doc. # 6 at 14, quoting In re Querner, 7 F.3d at 1199.)  Unlike Omega, however, he argues that the general rule should apply in this case and that it was not an abuse of discretion for the bankruptcy court to dismiss the Adversary Proceeding.  Central to the Trustee's argument are two assertions: (1) that the grounds for dismissal were especially strong because the Adversary Proceeding "was not even 'related to' the [SRB] Bankruptcy Case" (doc. # 6 at 14); and (2) that Omega is barred by issue preclusion from contesting the bankruptcy court's findings that the Prudential Stock belongs to TCC (id. at 16).

First, the Trustee argues that "[a] matter is 'related to' a case under Title 11 if the outcome 'could conceivably have any effect on the estate being administered in bankruptcy.'"  (Id. at 14 (quoting In re Wood, 825 F.2d at 93).)  "Under this test," asserts the Trustee, "the Adversary Proceeding was not even 'related to' the Bankruptcy Case," since the bankruptcy court had already interpreted the Plan and concluded that the Prudential Stock belonged to TCC and "that Spector Red Ball, its estate, and the liquidating trustee under its Plan have no rights in, or claims to, that property."  (Id. at 14–15.)  Citing to the transcript of the hearing on Omega's Motion to Reopen SRB's Bankruptcy Case, the Trustee insists

that the bankruptcy court expressly found that neither SRB nor its bankruptcy

estate existed anymore.  (Id. at 15.)  Said the bankruptcy court:

> My point is, this is not a revested debtor . . . .  This is not where the assets
> came in prepetition, into the debtor-in-possession, and then were revested in
> the reorganized debtor . . . .  At confirmation, they went out, and there's no
> reorganized debtor or revested debtor . . . so, there's no – there's no property
> of the estate left.

(Id. at 15 (quoting Tr. at 79, lines 22–25; 80, lines 1–7).)  Accordingly, while the

bankruptcy court "clearly had subject matter jurisdiction" over the Adversary

Proceeding when it was filed—since it "sought a determination of whether certain

property was property of the debtor's estate"—the Trustee argues that the court

"lost" jurisdiction over the Adversary Proceeding once it determined that SRB did

not have an interest in the property at issue.  (Id. at 16.)  As the Trustee puts it:

> [A]fter (1) the Bankruptcy Court found that the property at issue was
> property of TCC Industries, Inc., and not of Spector Red Ball, its bankruptcy
> estate or the liquidating trust created under its Plan[;] (2) the Court entered
> an order, necessarily based on those findings, that denied Omega's request to
> reopen the Spector Bankruptcy Case[;] and (3) that order became final and
> non-appealable, it was clear that the factual basis for the most likely grounds
> for Bankruptcy Court jurisdiction—that a determination of whether property
> of the estate was involved—was in fact absent.

(Id.)  While the Trustee argues in terms of jurisdiction, however, he does not assert

that the bankruptcy court was required to dismiss the Adversary Proceeding after it

refused to reopen SRB's bankruptcy case.  "[A]lthough the Bankruptcy Court's

decision to dismiss the Adversary Proceeding was based on facts that typically

would be determinative of subject matter jurisdiction," states the Trustee, "it did

not find a lack of jurisdiction as the basis for that dismissal." (<u>Id.</u> at 10.) "[T]he Court considered those facts not as determinative of jurisdiction but rather as factors to weigh in determining whether to exercise its discretion to dismiss the Adversary Proceeding." (Doc. # 6 at 10.)

Second, the Trustee argues that "under principles of collateral estoppel or issue preclusion, the Bankruptcy Court and the parties were bound by the Court's prior findings and conclusions on the Motion to Reopen . . . ." (<u>Id.</u>) "[I]n both the Adversary Proceeding and the Motion to Reopen," says the Trustee, "the Bankruptcy Court was asked to analyze, and it did analyze at the Motion to Reopen Hearing, the parties' rights and claims under the Confirmation Order, the Plan and the Stock Purchase Agreement." (<u>Id.</u> at 17.)  Moreover, "the same persons as were parties to the Adversary Proceeding appeared and were heard on the Motion to Reopen. (<u>Id.</u>)  And finally, "the determination at the Motion to Reopen Hearing that the [Prudential Stock was] property of TCC Industries, Inc., was a necessary part of the order denying the Motion to Reopen." (<u>Id.</u>)  Not only is Omega "estopped to deny that TCC Industries, Inc. is the owner of the [Prudential Stock]" and "barred . . . from asserting that the Bankruptcy Court should not have dismissed the Adversary Proceeding," therefore, but the fact that it is so estopped also weighs in favor of a finding that the bankruptcy court did not abuse its discretion in dismissing the Adversary Proceeding. (<u>Id.</u> at 18.)

II.   <u>Analysis</u>

A.   <u>The Bankruptcy Court Did Have "Related To" Jurisdiction Over the Adversary Proceeding</u>

The jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in and limited by statute.  <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300 (1995).  Section 1334 of Title 28 provides that district courts—and, by referral, bankruptcy courts—have subject-matter jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  The Fifth Circuit has held that, for the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under," "arising in a case under," or "related to a case under" Title 11, since these prongs operate conjunctively to define the scope of jurisdiction.  <u>In re Canion</u>, 196 F.3d 579, 584 (5th Cir. 1999).  "Instead, to ascertain whether jurisdiction exists, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy."  <u>In re Walker</u>, 51 F.3d 562, 569 (5th Cir. 1995) (internal quotations omitted).

An adversary proceeding falls within the bankruptcy court's "related to" jurisdiction if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  <u>In re Wood</u>, 825 F.2d at 93 (citing <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984)).  The possibility

19

that a suit may ultimately have no effect on the estate is not enough to conclude

that there would be no conceivable effect.  Id.  "Certainty or even likelihood of

such an effect is not a requirement."  Arnold v. Garlock, 278 F.3d 426, 434 (5th

Cir. 2001) (citing Randall & Blake, Inc. v. Evans (In re Canion), 196 F.3d 579, 588

(5th Cir. 1999)).

   As described above, Omega argues that the bankruptcy court

dismissed the Adversary Proceeding because it believed it did not have

subject-matter jurisdiction.  While the Trustee argues in terms of jurisdiction,

however, he does not assert that the bankruptcy court was <u>required</u> to dismiss the

Adversary Proceeding after it refused to reopen SRB's bankruptcy case; he argues

only that the bankruptcy court's decision not to reopen SRB's bankruptcy case—

the fact that there was no open bankruptcy case to which the Adversary Proceeding

could "relate"—"weigh[s] in favor of the Bankruptcy Court's <u>exercise of its</u>

<u>discretion</u> to dismiss the Adversary Proceeding . . . ."  (Id. (emphasis added).)

   First, the Court finds that the Adversary Proceeding did, indeed,

"relate to" the SRB bankruptcy case within the meaning of 11 U.S.C. § 1334.

Again, an adversary proceeding falls within the bankruptcy court's "related to"

jurisdiction if "the outcome of that proceeding could conceivably have any effect

on the estate being administered in bankruptcy."  In re Wood, 825 F.2d at 93.  The

Adversary Proceeding, even after the bankruptcy court denied Omega's Motion to

Reopen SRB's bankruptcy case, surely meets this standard.  As the Trustee

concedes, "[a]t the time the Adversary Proceeding was filed, the Bankruptcy Court

clearly had subject matter jurisdiction over (and the authority to enter a final order

in) the suit, as a proceeding that on its face sought a determination of whether

certain property was property of the debtor's estate."  (Doc. # 6 at 15.)  That

characterization of the Adversary Proceeding was no less accurate after the

bankruptcy court denied Omega's Motion to Reopen SRB's bankruptcy case.  The

contents of Omega's Complaint remained unchanged; it was still seeking a

determination of whether the Prudential Stock belonged to SRB's bankruptcy

estate, TCC's bankruptcy estate, to the "reorganized" SRB, or to another party.

Such a proceeding could "conceivably" affect SRB's bankruptcy estate.  To

describe only one possibility, the bankruptcy court could have retained jurisdiction

over the Adversary Proceeding, been convinced by Omega's arguments regarding

abandonment of assets, and then decided that it should reconsider its decision not

to open SRB's bankruptcy case.  It seems plain, then, that the Adversary

Proceeding was "related to" SRB's bankruptcy and that the bankruptcy court

could, in its discretion, exercise jurisdiction over it.

This, however, is a moot point; for the Court can find nothing in the

record to suggest that the bankruptcy court believed that it was constrained to

dismiss the adversary proceeding due to a lack of subject-matter jurisdiction.

While the bankruptcy court's Order Dismissing Adversary Proceeding did not state its reasoning (see Adv. P., doc. # 3), the language of both the Motion to Dismiss Adversary Proceeding (Adv. P., doc. # 2) and the Order Dismissing Adversary Proceeding (Adv. P., doc. # 3) suggests that the bankruptcy court realized it had the discretion to decide whether it should dismiss the Adversary Proceeding.

In the Motion to Dismiss, the Trustee argued that "there is no pending bankruptcy case, and this adversary proceeding should be dismissed."  (Adv. P., doc. # 2 ¶ 3 (emphasis added).)  The Trustee did not use mandatory language; he did not insist that the case "must" be dismissed for lack of jurisdiction.  Similarly, in the Order Dismissing Adversary Proceeding, the bankruptcy court stated that it had "determined that the motion [to dismiss] [was] meritorious and should be granted."  (Adv. P., doc. # 3 at 1 (emphasis added).)  Again, the bankruptcy court gave no indication that it believed it was required to dismiss the case because it did not have subject-matter jurisdiction.

As a general rule, absent evidence to the contrary, a reviewing court assumes that the court below knew the law and was aware of its own discretion. See, e.g., United States v. Morales-Castillo, 314 F.3d 561, 564 (11th Cir. 2002) (rejecting the defendant's contention that the district court failed to recognize that it had discretion "because there is no evidence in the record that the district court believed it was required to [decide as it did]"); United States v. Pinnick, 47 F.3d

434, 439 (D.C. Cir. 1995) (holding that when "[w]e do not know why the district court refused to depart, . . . we assume that the district court knew and applied the law correctly," rather than that it erroneously thought itself without discretion (citing United States v. Garcia-Garcia, 927 F.2d 489, 491 (9th Cir. 1991))). Accordingly, absent some indication that the bankruptcy court was unaware that it had the discretion to retain jurisdiction over related proceedings—in appropriate circumstances—even after the underlying bankruptcy was closed, the Court assumes that it was aware of its own discretion.

> B. The Bankruptcy Court Did Not Abuse Its Discretion By Dismissing the Adversary Case Even Though It Had "Related To" Jurisdiction Over It

The Fifth Circuit has explained that "as a general rule the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings." Matter of Querner, 7 F.3d 1199, 1201 (5th Cir. 1993). "The general rule favors dismissal because the court's jurisdiction over the related proceedings depends upon the nexus between the underlying bankruptcy case and the related proceeding." Id. (citing Smith, 866 F.2d at 580). When the underlying bankruptcy case has been dismissed, therefore, it is likely that the nexus between it and the related proceeding—and, accordingly, the bankruptcy court's claim to jurisdiction—is weakened.

Nevertheless, the mere fact that a bankruptcy case has been dismissed does not require a bankruptcy court to dismiss pending adversary proceedings. In re Querner, 7 F.3d at 1201; In re Johnson, 575 F.3d 1079, 1083 (10th Cir. 2009). Instead, as stated above, the decision to retain jurisdiction over an adversary proceeding following dismissal of the bankruptcy case is up to the discretion of the court and is reviewed for abuse of discretion. In re Querner, 7 F.3d at 1201; see also In re Carraher, 971 F.2d 327, 328 (9th Cir. 1992) (holding that bankruptcy court did not abuse its discretion by retaining jurisdiction where adversary proceeding had been pending for several years); In re Morris, 950 F.2d 1531, 1534 (11th Cir. 1992) (bankruptcy court did not, upon dismissal of Chapter 11 case, abuse its discretion in retaining subject-matter jurisdiction over debtor adversary proceeding where adversary proceeding had been pending for over four years and was ready for trial). For the reasons that follow, the Court concludes that, in the instant case, the bankruptcy court did not abuse its discretion when it dismissed the Adversary Proceeding.

Omega's primary purpose in initiating the Adversary Proceeding was to obtain a "declaration and determination . . . that the [Prudential Stock] [did] not constitute property of the Bankruptcy Estate of [SRB] nor of the Bankruptcy Estate of [TCC]." (Adv. P., doc. # 1 ¶ 36) In other words, Omega wanted the bankruptcy court to declare that the Prudential Stock belonged to SRB and "should be directly

turned over to the Receiver . . . ." (Id.)  However, by the time the bankruptcy court considered the Trustee's Motion to Dismiss the Adversary Proceeding, it had already concluded—when it decided not to reopen SRB's bankruptcy case—that the disputed assets did not belong to SRB; they had gone "either to TCC or the liquidating trustee." (Doc. # 6 at 12 (quoting the transcript of the Hearing on the Motion to Reopen at 105, lines 14–17).)  It was for that reason that the bankruptcy court denied Omega's Motion to Reopen SRB's bankruptcy case.  (See doc. # 8 at 1 ("The Motion to Reopen Case was denied because all the remaining assets have been passed to TCC Industries, Inc.").)  Omega had not moved the bankruptcy court to reconsider this Order; nor had Omega filed a notice of appeal.  It was not illogical, therefore, for the bankruptcy court to conclude that hearing the Adversary Proceeding—which was an attempt to re-litigate the issue of ownership of the Prudential Stock—would be a waste of judicial resources.

        Not only would hearing the Adversary Proceeding have required the bankruptcy court to re-decide issues that it had already decided, it would have required the bankruptcy court to re-decide issues that its sister court in Austin had already decided—potentially subjecting interested parties to inconsistent obligations.  As detailed above, the Bankruptcy Court for the Western District of Texas, Austin Division, determined in 2010 that the Prudential Stock belonged to TCC's bankruptcy estate; that is why it reopened TCC's bankruptcy case and

ordered the State of Texas to turn over the Prudential Stock to TCC's bankruptcy

estate.  (See supra at 4–5.)  It rejected the argument of the Receiver (who was

purportedly working on Omega's behalf) that the Prudential Stock was an

abandoned asset that reverted to SRB—precisely the same argument that Omega

made in the Adversary Proceeding complaint.  (See Adv. P., doc. # 1 ¶ 22.)

Allowing the Adversary Proceeding to go forward would, in effect, have allowed

Omega to collaterally attack the Austin bankruptcy court's orders.  Indeed, it is

clear from the face of the Complaint that this is precisely what Omega wanted: It

insisted that "the ruling that the Austin Bankruptcy Court issued on November 3,

2011[,] is erroneous as a matter of law" and urged the bankruptcy court to "set

aside" that Order "without further unnecessary delay."  (Adv. P., doc. # 1 ¶ 16.)

Granting the relief that Omega sought would have subjected the State of Texas,

which had already complied with the Austin court's order (SRB Bankr.,

doc. # 3049 ¶ 7), to inconsistent and contrary orders.  Moreover, it would have

rewarded Omega for forum shopping and gamesmanship—for failing to appeal the

Austin court's decision and instead attempting to collaterally attack it in a different

court.  (See SRB Bankr., doc. # 3045 ¶ 15, in which Omega states that "while it

may be feasible to appeal the judgment of [TCC's] current bankruptcy court, it

seems appropriate and more diligent, reasonable, and deferential in this matter to

simply obtain an order from this Court clarifying [SRB's] post-bankruptcy rights

. . . .")

 In light of the fact that hearing the Adversary Proceeding would have

both (1) required the bankruptcy court to re-litigate issues it had already

determined when it decided the Motion to Reopen SRB's bankruptcy estate and (2)

required the bankruptcy court to re-litigate issues its sister court had already

decided, raising the risk that interested parties (including the State of Texas) would

be subjected to inconsistent orders, the Court cannot conclude that it was an abuse

of discretion for the bankruptcy court to dismiss the Adversary Proceeding.

 Again, the Court does not address whether the bankruptcy court erred

when it determined that the Prudential Stock belonged to TCC's bankruptcy estate

and that the SRB bankruptcy case should not be reopened; Omega did not appeal

that Order, and it is not before the Court.  The only question before the Court is

whether the bankruptcy court abused its discretion when, after it determined that

SRB's bankruptcy case should not be reopened, and in light of the fact that Omega

did not appeal that decision, it determined that the Adversary Proceeding should be

dismissed.  For the reasons given, the Court concludes that the bankruptcy court

did not abuse its discretion.

<u>CONCLUSION</u>

For the reasons given, the Court hereby **AFFIRMS** the January 9, 2012 Order of the bankruptcy court dismissing the Adversary Proceeding (Adv. P., doc. # 3).

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, March 29, 2013.

_____
David Alan Ezra
Senior United States District Judge